BUTLER v CITY OF NEWAYGO

Docket No. 55315. Submitted March 4, 1982, at Grand Rapids.—
    Decided April 21, 1982.

    Neil Butler was employed as superintendent of sewers and water
    and superintendent of public works for the City of Newaygo.
    Subsequently, Butler was relieved of his duties as superinten-
    dent of public works by the city manager. Butler retained his
    other positions and did not suffer any decrease in salary.
    Thereafter, Butler was reprimanded by the city manager for
    providing some municipal equipment to a private contractor
    without having first secured the proper authorization from the
    city manager and Butler was asked to take a lie detector test in
    connection with an incident wherein a city pump house was
    broken into and oil drained from a turbine engine. Butler,
    thereupon, resigned from his job and sought unemployment
    compensation. The Michigan Employment Security Commission
    determined that Butler was ineligible for unemployment bene-
    fits because Butler's resignation was entirely voluntary and
    that Butler had not been fired and that he had access to
    grievance procedures through which he could have resolved his
    dissatisfaction without leaving his job. Butler protested the
    determination and the MESC issued a redetermination affirm-
    ing the prior determination. Subsequently, upon review, a
    MESC referee affirmed the decision. Butler appealed and the
    MESC board of review affirmed the decision of the referee.
    Butler appealed to the Newaygo Circuit Court. The court,
    Terrence R. Thomas, J., affirmed the decision of the MESC.
    Butler appeals, alleging that the circuit court erred in affirming
    the decision of the MESC and that it erred in ordering him to
    pay the statutorily prescribed fees for transcripts of the circuit
    court proceedings needed for his appeal. Held:

        1. The circuit court order affirming the administrative denial
    of the requested benefits was not erroneous. An award of the
    requested benefits to the plaintiff would have thwarted the
    express and limited legislative policy to combat the burden of

REFERENCES FOR POINTS IN HEADNOTES
[1] 76 Am Jur 2d, Unemployment Compensation §§ 93, 94.
[2] 20 Am Jur 2d, Costs § 69.

involuntary unemployment. There is ample evidentiary support for the MESC decision in the record. The record does not support the contention that Butler was compelled to resign.

2. The circuit court erred in ruling that the court reporter was not required to provide the requested circuit court transcript to Butler free of charge. Even though according to statute circuit court reporters are allowed to charge certain fees for transcripts, the MESA contains a special provision that no claimant shall be charged any fees by the commission or any court or officer thereof. Court reporters are officers of the court.

Affirmed in part and reversed in part.

1. UNEMPLOYMENT COMPENSATION — APPEAL — EVIDENCE.

The Court of Appeals should reverse a decision of the Michigan Employment Security Commission only if the decision of the commission is contrary to law or if it is not supported by competent, material and substantial evidence on the whole record (MCL 421.38; MSA 17.540).

2. COURTS — CIRCUIT COURT REPORTERS — TRANSCRIPT FEES.

Circuit court stenographers may charge certain fees for transcripts ordered by parties; however, the allowance of such fees is inapplicable to any case wherein a special provision is otherwise made by law; the Michigan Employment Security Act provides specifically that no claimant shall be charged fees of any kind by the commission or its representatives or by any court or any officer thereof; circuit court stenographers are officers of the circuit court and are not allowed to charge fees for transcripts requested by a claimant under the act for use in legal proceedings to pursue his claim (MCL 421.31, 600.2501, 600.2543; MSA 17.533, 27A.2501, 27A.2543).

*Paul B. Newman,* for claimant.

*Reber & Reber* (by *Karl J. Weyand, Jr.),* for City of Newaygo.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *James H. White,* Assistant Attorney General, for Michigan Employment Security Commission.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

D. F. WALSH, P.J. After a July 18, 1977, hearing, a Michigan Employment Security Commission (MESC) referee affirmed the commission's redetermination that claimant Neil Butler was ineligible to receive unemployment compensation benefits under the Michigan Employment Security Act (MESA). MCL 421.1 *et seq.;* MSA 17.501 *et seq.* The denial of claimant's request for benefits was based on the claimant's having voluntarily left his job without good cause attributable to his employer. MCL 421.29(1)(a); MSA 17.531(1)(a). The MESC board of review affirmed this decision. The claimant appeals the circuit court's order affirming the board of review's determination. See MCL 421.32-421.38; MSA 17.534-17.540. The claimant also appeals the circuit court's order that he pay for transcripts needed by him to perfect his appeal to this Court.

The claimant was superintendent of sewers and water superintendent for the City of Newaygo. He was given the additional position of superintendent of public works in November, 1974. After approximately 13 months, the claimant was relieved of his duties as superintendent of public works by the city manager. He retained his other positions and did not suffer any decrease in salary. The claimant did not voice any objection to this change in his area of responsibility.

On May 12, 1976, Butler was reprimanded by the city manager for providing some municipal equipment to a private contractor without having first secured the proper authorization for such action from the city manager.

* Circuit judge, sitting on the Court of Appeals by assignment.

Also in May, 1976, someone broke into a city pump house and drained the oil out of one of the turbine engines, thereby ruining the engine. The claimant and the other persons who had keys to the pump house were asked to take a lie detector test in connection with this incident. No such test was ever given.

The referee found that Butler had quit his job because of the May, 1976, reprimand, because he felt that he was being accused of damaging the motor pump and because he had been asked to take a lie detector test.[1] He further noted that, although the removal of the claimant from the position of superintendent of public works was a discharge, there had been no decrease in pay and the claimant had kept his other job titles. The referee found that the claimant's resignation was entirely voluntary. He noted that Butler had not been fired but that he had had access to grievance procedures through which he could have resolved his dissatisfaction without leaving his job.

On appeal, the claimant argues once again that he was forced to resign his job.

In reviewing decisions of the MESC, we may reverse only if the commission decision is contrary to law or if it is not supported by competent, material and substantial evidence on the whole record. MCL 421.38; MSA 17.540, *Smith v MESC,* 410 Mich 231; 301 NW2d 285 (1981).

Upon review of the record, we find ample evidentiary support for the administrative decision. While the city manager may have circumvented proper procedures by removing the claimant from

---

[1] The record suggests that the claimant submitted his notice of resignation before the pump house incident. However, for purposes of our review we will accept the referee's finding, which was favorable to the claimant.

the public works position without first securing a city council resolution to that effect, this action in and of itself did not give the claimant good cause to simply quit his job. In addition, the record supports the conclusion that the May, 1976, reprimand concerning use of city equipment was not without basis in city policy. The claimant does not argue to the contrary. Clearly, this reprimand did not give the claimant good reason to resign. Finally, the mere fact that the claimant felt personally affronted by the request that he take a lie detector test did not constitute good cause to quit his job. The employer did not require that polygraphs be taken and employees were not threatened with any disciplinary measures if they refused to take the test. It is clear, as the referee found, that the claimant objected to the lie detector request only because he felt unjustly accused of responsibility for the damage to the pump. We agree with the referee that this did not justify Butler's quitting his job outright.

We reject the claimant's contention that he was somehow "compelled" by the "iron hand of the tyrant [i.e., his employer]" to submit his resignation. The record simply does not support this interpretation of the circumstance of the claimant's employment and resignation. In our view, an award of the requested benefits to the claimant would have thwarted the express and limited legislative policy to combat the burden of "involuntary unemployment". MCL 421.2; MSA 17.502. The circuit court order affirming the administrative denial of the requested benefits is, therefore, affirmed.

In his second issue on appeal, the claimant argues that the circuit court erred in ordering him to pay the statutorily prescribed fees for tran-

scripts of circuit court proceedings.[2] The claimant needed those transcripts in order to perfect his appeal to this Court.

MCL 600.2543; MSA 27A.2543, provides that certain fees may be charged by circuit court stenographers for transcripts ordered by parties. Under MCL 600.2504; MSA 27A.2504, however, the allowance of fees set forth in Chapter 25 of the Revised Judicature Act, MCL 600.2501 *et seq.;* MSA 27A.2501 *et seq.,* is made expressly inapplicable to any case where special provision is otherwise made by law. The MESA contains just such a special provision relating to fees. MCL 421.31; MSA 17.533 provides in part that, "No individual claiming benefits shall be charged fees of any kind in any proceeding under this act by the commission or its representatives or by any court or any officer thereof".

The court reporter (or court stenographer) is clearly an officer of the court. See MCL 600.2501; MSA 27A.2501. Court reporters are salaried employees of their respective counties. MCL 600.1114 *et seq.;* MSA 27A.1114 *et seq.* Pursuant to MCL 600.1111; MSA 27A.1111, the Supreme Court has prescribed the duties of court reporters. These include attendance at court, recording of proceedings, safekeeping of records and furnishing of transcripts upon request. GCR 1963, 915.

The statutory prohibition against charging fees to claimants for unemployment compensation benefits is unambiguous. In light of MCL 600.2504; MSA 27A.2504, there is no conflict in this regard between the Revised Judicature Act fee schedule

---

[2] On April 9, 1981, this Court remanded this cause to the circuit court for a hearing on the issue of whether the claimant should be required to pay these transcript fees. After a May 12, 1981, hearing, the circuit court ordered that the court reporter need not provide the requested transcripts until payment for them had been arranged.

and the MESA. Court reporters are clearly officers of the court. Under generally recognized principles of statutory construction, we are precluded from varying the plain meaning of MCL 421.31; MSA 17.533. *Lawrence v Dep't of Corrections,* 88 Mich App 167; 276 NW2d 554 (1979), *lv den* 407 Mich 909 (1979). We, therefore, hold that the circuit court erred in ruling that the court reporter was not required to provide the requested circuit court transcript to the claimant free of charge.[3] The claimant is entitled to immediate return of any money advanced by him for circuit court transcripts.

Affirmed in part and reversed in part.

---

[3] The issue of from whom, if anyone, the court reporter is entitled to compensation for transcripts provided to unemployment compensation benefit claimants is not presented to us in this case. We express no opinion on how that issue should be resolved.